IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS R. CLOSE,<br>　　Petitioner, | )<br>)<br>) |
| 　　　　v. | )　Civil Action No. 07-222<br>) |
| GERALD L. ROZUM, et al.,<br>　　Respondents. | )<br>)<br>) |

Report and Recommendation

Recommendation:

    It is respectfully recommended that the petition of Thomas R. Close for a writ of habeas corpus be dismissed and that a certificate of appealability be denied for lack of a viable federal constitutional issue.

II. Report:

    Thomas R. Close, by his counsel, has presented a petition for a writ of habeas corpus.

    Petitioner is presently serving a thirteen to thirty year sentence imposed following his conviction, by a jury, of three counts of aggravated assault, four counts of reckless endangerment, one count of terroristic threats and one count of burglary at No.498 C 2000 in the Court of Common Pleas of Westmoreland County, Pennsylvania. This sentence was imposed on November

26, 2001.[1]

An appeal was taken to the Superior Court in which the issues presented were:

1. Did the trial court err as a matter of law in failing to instruct the jury that malice was a critical element of the crime of aggravated assault, and that the Commonwealth must establish beyond a reasonable doubt that the defendant acted with malice before they could convict him of aggravated assault at counts 5,6, 7, 8 and 9 of the criminal information?

2. Did the Commonwealth introduce sufficient evidence at trial to establish the critical element of malice to justify the aggravated assault convictions at counts 6, 7 and 8 of the criminal information, and the intent to commit a crime therein element of the burglary conviction at count 5?

3. Did the trial court [comment] deny the defendant his right to a fair trial in instructing defense counsel, in the presence of the jury, to search the area for the defendant, whose whereabouts were unknown and who had waived his right to be present during a jury question?[2]

On December 11, 2002, the judgment of sentence was affirmed[3] and apparently leave to appeal to the Pennsylvania Supreme Court was denied on May 28, 2003.[4] Thus, the petitioner's conviction became final on August 26, 2003, when his time to seek certiorari expired.

On May 7, 2004, the petitioner submitted a counseled petition for post-conviction relief.[5] That petition was dismissed on June 21, 2004, and new counsel was appointed to represent the

---

[1] The petitioner was originally sentenced on June 27, 2001 to a twenty to forty year period of imprisonment. On November 26, 2001, this sentence was modified to the present sentence (See: petition at ¶ 6).

[2] See: Appendix at p.67a.

[3] See: Appendix at pp.130a-143a.

[4] See: Appendix at p.182a.

[5] See: Appendix at pp. 34a and 170a-180a.

petitioner and directed to file a new petition.[6] A second and third counseled post-conviction petitions were ultimately denied on December 22, 2004.

> An appeal was taken to the Superior Court in which the sole question presented was:
>
> Whether the trial court erred in dismissing the appellant's second amended petition for post-conviction collateral relief in the light of the affidavit of Allan Yauger which constitutes newly discovered evidence that was unavailable at the time of trial but which became available later and would have changed the outcome of the trial had the evidence been introduced.?[7]

On December 30, 2005 the Superior Court affirmed the denial of post-conviction relief.[8] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed and relief denied on May 19, 2006.[9]

> The instant counseled petition was filed on February 21, 2007 and is clearly untimely.
>
> It is provided in 28 U.S.C. § 2244(d)(1) and (d)(2) that:
>
> (1) A 1-year period of limitation shall apply to the application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[6] See: Appendix at pp.208a-209a.

[7] See: Appendix at pp.144a-168a.

[8] See: Appendix at pp.267a-276a.

[9] See: Answer at ¶ 14.

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the Pennsylvania Superior Court affirmed the direct appeal on December 11, 2002 and leave to appeal to the Pennsylvania Supreme Court was denied on May 28, 2003. In Kapral v. United States, 166 F.3d 565 (3d Cir.1999), the Court noted that in the absence of the filing of a petition for discretionary review, the judgment becomes final when the time period in which to seek that review expires. Thus, the petitioner's conviction became final on August 26, 2003. The effective date of the Antiterrorism and Effective Death Penalty Act which imposed the one year statute of limitations is April 24, 1996 and thus it is applicable here. The petitioner did not seek post-conviction relief until May 7, 2004, or nine months after his conviction became final. The denial of post-conviction relief was affirmed by the Superior Court on December 30, 2005, and leave to appeal to the Pennsylvania Supreme Court was denied on May 19, 2006. The instant petition was filed on February 21, 2007. Thus, combining the nine month delay in initially seeking post-conviction relief with the additional nine month delay in seeking relief here, far in excess of the one year period in which to seek relief has expired, and the petition here is time barred. However, in its answer, the Commonwealth "concedes that the instant petition and claims are not time barred" and thus it has waived this obvious defense.

In support of his petition, Close alleges he is entitled to relief on the grounds that he was denied due process in that the jury instructions for aggravated assault failed to instruct on "malice" as a essential element of that offense; that the trial court committed error by stating to the jury that by being voluntarily absent from court during trial, the defendant had waived his right to be present, and that the court erred in sentencing him to a mandatory five year term of

imprisonment without the jury having made a finding of malice and intent to cause serious bodily harm.

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly

established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[ u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, it would appear that the substantive issues which the petitioner seeks to raise here with the exception of the imposition of a five year mandatory sentence have been raised in the appellant courts of the Commonwealth and are for this reason, properly before this Court for consideration.

The factual background is set forth in the November 26, 2001 Opinion of the trial court:

On December 29, 1999, Defendant and a companion, Mark Hutchinson, went to the home of Edward and Constance Poklembo following a dispute involving Hutchinson's dogs. Hutchinson drove his pickup truck into the Poklembo's driveway and began to race the engine; the headlights of the truck were shining into the Poklembo's home. Edward Poklembo went out of his home to investigate

and encountered Hutchinson and Defendant. An argument ensued between Hutchinson and Poklembo; and when Poklembo ordered Hutchinson off the property, Hutchinson punched Poklembo, striking him about his left eye. Poklembo responded by grabbing Hutchinson, slamming him against the side of the pickup truck, and throwing him to the ground.

During the fight Defendant went into the pickup truck and retrieved a 7mm bolt-action hunting rifle. Defendant pointed the rifle at Edward Poklembo and ordered him away from Hutchinson, threatening to blow his "F'ing head off." Constance Poklembo, who had exited her home shortly after her husband, asked Defendant to leave the property; but defendant pushed her down and threatened her with the rifle. Edward Poklembo helped his wife to her feet and they began to walk backwards toward their home. Defendant pursued them, pointing the rifle at the Poklembos. Defendant followed the Poklembos into their home and held them at gunpoint in the kitchen. The Poklembo's two children, Michael and Jennifer, were present inside the home. Michael, seeing his family threatened, retrieved a shotgun from another room in the house, entered the kitchen, and pointed it at defendant. Defendant then retreated from the Poklembos' home, seconds later, the Poklembos heard two gunshots and discovered that bullets had hit the side of their home and that one of the bullets had entered Michael Poklembo's bedroom and lodged in the head of the son Michael's bed.

Defendant was subsequently arrested and charged with four counts of aggravated assault (one count for each member of the Poklembo family), one court of burglary (due to the events at/in the Poklembo's home), four counts of recklessly endangering another person, and one count of terroristic threats. The case was tried before a jury, which acquitted him on one count of aggravated assault (the count involving Jennifer Poklembo), but found him guilty on all other counts.[10]

The respondents now contend that the petitioner has failed to exhaust the available state court remedies on the issues which he seeks to raise here since those issues were not raised in the state courts as matters of violations of federal law.  It is clear that in his direct appeal, the petitioner raised all issues in terms of violations of violations of state law.[11] In the post-conviction appellate proceedings the substantive issues were raised as purely matters of state law with the

---

[10] See: Appendix at pp 86a-87a.

[11] See: Appendix at pp.60a-85a.

exception to the reference to Blakey v. Washington, 124 S.Ct. 2531 (2004) as it impacted on the sentence imposed.[12] In Holloway v. Horn, 355 F.3d 707 (3d Cir.2004), the Court held that in order for exhaustion to have occurred, the petitioner must have presented the issue to the state courts in such a manner as to make them aware that federally protected rights were being raised. Clearly, other than in the challenge to the mandatory sentence imposed which is raised in this Court for the first time, no federal rights were asserted in the state courts and the petitioner is barred from raising them here.

      Although procedurally barred, we examine all the issues which the petitioner seeks to raise here.

      His first issue concern the element of malice. The petitioner contends that the trial court erred in failing to instruct that malice is a necessary element of aggravated assault, and that the evidence was insufficient to permit the jury to draw the inference of malice.

      As applies here, the relevant Pennsylvania statute defines aggravated assault as:

A person is guilty of aggravated assault if he ...(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon.

18 Pa.C.S.A. 2702((a)(4).

      The Pennsylvania courts have concluded that "malice" must be present to sustain a conviction of aggravated assault. Com v. Nichols, 692 A.2d 181 (Pa.Super.1997). However, as the Superior Court observed in reviewing Close's conviction, the Court in Nichols held:

> It is well settled that malice must be present to sustain a conviction for aggravated assault. Furthermore, "where malice is based on the recklessness of consequences, it is not sufficient to show mere recklessness ... but rather, it must be shown that the defendant

---

[12] See: Appendix at pp.144a-168a.

> consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm."
>
> That is, the phrase "under circumstances manifesting extreme indifference to the value of human life" modifies "recklessly" such that reckless conduct not circumstantially manifesting such indifference will not supported an aggravated assault conviction ...

However, the Court [in <u>Nichols</u>] noted that the phrase, "under circumstances manifesting extreme indifference to the value of human life," does not modify "intentionally" or "knowingly," as intentionally or knowingly causing or attempting to cause serious bodily injury <u>is sufficient to establish malice</u>[13]

The Superior Court in reviewing this case, then continued to explain that in instructing the

jury,

> the trial court instructed the jury on the elements of aggravated assault pursuant to 18 Pa..C.S. § 2701(a)(1)[sic.] as follows [citing pp.385-386 of the jury instructions][14]...

---

[13] See: Appendix at p.134a.

[14] Those instructions provided:
> Defendant has been charged with the crime of aggravated assault... In order to find that defendant guilty of those charges, you must find that each of the elements of the crime have been established beyond a reasonable doubt. There are two elements of this charge.
>
> First, that the defendant attempted to cause serious bodily injury to that individual of the Poklembo family.
>
> To find that the defendant attempted to do this, you must find that he engaged in conduct which constituted a substantial step toward causing serious bodily injury to each of the member of the Poklembo family or to any of them.
>
> Second, that the defendant's conduct in this regard was intentional or, in other words, that it was his conscious object or purpose to cause such serious bodily injury.
>
> If after considering all of the evidence you find that the Commonwealth has established each of these two elements beyond

> In its charge, the trial court clearly instructed the jury that in order to find Appellant guilty of aggravated assault the jury had to find Appellant intentionally or knowingly caused or attempted to cause serious bodily injury. .. If in its charge the trial court would have permitted the jury to find Appellant guilty of aggravated assault on mere "recklessness," then, pursuant to ***Nicholas***, the trial court would have had to modify the term "reckless" in a manner that would have shown under the circumstances Appellant manifested an extreme indifference to the value of human life, i.e., malice. However, since the trial court instructed the jury it had to find Appellant intentionally or knowingly caused to attempted to cause serious bodily injury to the victims, and did not permit the jury to find Appellant guilty on mere recklessness, that was sufficient to establish malice.
>
> The record does not support Appellant's assertion that the jury charge was inadequate as to its language regarding the malice requirement. The fact that Appellant believes that the trial court should have used the work "malice" in it charge does not render the court's jury charge defective... We will uphold the trial court's charge since when read and considered in whole the charge clearly, accurately and thoroughly reflected the law on aggravated assault ...[15]

We first observe that the elements of the offense are purely matters of state law, and as such not subject to review here. Estelle v. McGuire, 502 U.S. 62 (1991). Additionally, in reviewing a habeas challenge to jury instructions, federal courts must review those instructions as a whole and not in isolation. Estelle v. McGuire, supra. As such, this instruction cannot be found defective or contrary to determinations of the Supreme Court.

The next issue which the petitioner raises is the comment by the trial court that by his absence, the petitioner had waived his right to be present. Specifically, during deliberation and in response to an inquiry received from the deliberating jury the court reread its instruction for aggravated assault and recklessly endangering another person (TT.401). When an attempt was

---

> reasonable doubt, then you should find the defendant guilty of aggravated assault. Otherwise, you must find defendant not guilty of aggravated assault (TT.385-386).

[15] See; Appendix at pp. 135a-136a.

made to locate the petitioner for purposes of responding to the instruction, defense counsel stated that the defendant could not be located, and that on behalf of the defendant he was waiving his presence for that limited purpose (TT.401). The court commenced rereading the jury instructions and became uncomfortable with the petitioner's absence and recessed so that further attempts to locate the petitioner could be made (TT.402). Counsel then reported that he had made several unsuccessful attempts to locate the petitioner over about a half hour period and again waived the petitioner's presence (TT.404-407). Court was again convened and the court informed the jury that the defendant as well as the Commonwealth had waived the right to be present during this rereading, and specifically instructed the jury that no inference should be drawn from the petitioner's absence (TT.407). Thereupon the requested instruction was reread (TT408-410). The petitioner now contends that he was denied a fair trial as a result of his absence during this reinstruction.

    It has long been established that a criminal defendant has a right to be present at all stages of his prosecution, Shields v. United States, 273 U.S. 583 (1927), however, a defendant's presence is not mandated where that "presence would be useless, or the benefit but a shadow." Snyder v. Massachusetts, 291 U.S. 97, 106-107 (1934). In reviewing the present claim, the Superior Court observed that "where a defendant knowingly flees or fails to attend further proceedings, he is deemed to have knowingly and voluntarily waived his right to be present"[16](citing cases).

    In the present case, the petitioner was not located until approximately two weeks after his

---

[16] See: Appendix at p.142a.

disappearance[17], his presence during the rereading of the instruction would have been of marginal benefit at best, and the court clearly instructed the jury to draw no inference from his non-presence. Thus, it cannot be concluded that the decision of the state court was in any way contrary to federal case law as developed by the Supreme Court and this claim does not present a basis for relief.

Finally, the petitioner alleges here that he is entitled to relief as a result of the imposition of a mandatory five year sentence without a specific finding of "malice" by the jury as required by Apprendi v. New Jersey, 530 U.S. 466 (2000). This issue was never raised in the state appellate courts. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Such a default has occurred here, and the petitioner is procedurally barred from raising this claim here.

Because the issues raised by the petitioner are without merit, it is recommended that the petition of Thomas R. Close for a writ of habeas corpus be dismissed and that a certificate of appealability be denied.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely

---

[17] Id.

objections may constitute a waiver of any appellate rights.

                                                Respectfully submitted,

                                                s/Robert C. Mitchell,

Entered: May 24, 2007                        United States Magistrate Judge